UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ACTORA MECONN BANKHEAD, Plaintiff, | ) | |
| v. | ) | No. 1:23-cv-01600-SEB-TAB |
| J. GRAY, M. PFLEEGER, Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Actora Meconn Bankhead alleges that Defendants Lt. Michael Pfleeger and Sgt. Jarrod Gray violated his Eighth Amendment rights by using excessive force when attempting to extract him from his cell at Pendleton Correctional Facility ("Pendleton"). Dkt. 1. The Defendants have moved for summary judgment. For the reasons below, the motion for summary judgment, dkt. [50], is **GRANTED**.

## I.
## Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Bankhead and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

The Plaintiff, Mr. Bankhead, is an inmate in the custody of the Indiana Department of Correction ("IDOC"). At all times relevant, Mr. Bankhead was incarcerated at Pendleton. During the events in the lawsuit, the Defendants, Lt. Pfleeger and Sgt. Gray, worked at Pendleton. Dkt. 1.

On May 22, 2023, Mr. Bankhead heard that other inmates were threatening to kill him. Dkt. 51-1 at 7:20-24. Mr. Bankhead tried to talk to Lt. Pfleeger about the threats, but he seemed "indifferent" and did not apparently do anything to help. *Id.* at 8:1-4. The next day, May 23, Mr. Bankhead once again heard threats, so he began to "act[] like a donkey" and "caus[e] a scene" to get correctional officers to come to his cell to help him. *Id.* at 8:4-14. Specifically, Mr. Bankhead barricaded his cell doors shut with articles of clothing and threw water outside of his cell. *Id.* at

23: 8-17; 32:3-9. Mr. Bankhead testified that he wet the clothes to keep the officers from being able to cut them off his cell. *Id.* at 32:3-16.

Lt. Pfleeger came to Mr. Bankhead's cell and ordered Mr. Bankhead to cuff up several times so that he could be taken to segregation. *Id.* at 27:9-22. Each time, Mr. Bankhead refused. *Id.* Mr. Bankhead testified that he did not want to leave the cell unless the guards called a "signal," which would remove all other inmates from the range. *Id.* at 28:19–19:6. Lt. Pfleeger called for assistance and Sgt. Gray responded. Video footage shows that both officers attempted to talk with Mr. Bankhead. Dkt. 56 (video footage). After about six minutes, Sgt. Gray began using a J-knife to remove the clothes from Mr. Bankhead's cell, but struggled to get them off. *Id.*

Video footage shows that the three officers moved away from the front of the cell, seeming to evade something coming from inside the cell, at around the 10 minute and forty second mark. *Id.* The incident report states that Mr. Bankhead reached into his toilet and threw toilet water at Sgt. Gray, Lt. Pfleeger, and another assisting officer. Dkt. 51-2 at 1. Mr. Bankhead denies that he threw urine, stating that he threw water. Dkt. 51-1 at 23:10-11. At around the ten minute and forty-three second mark of the video, Sgt. Gray raised his can of OC spray and held it against the cell before passing the can to Lt. Pfleeger. Dkt. 56. Mr. Bankhead testified that Lt. Pfleeger told him, "you're going to cuff up or I'm going to light your ass up." Dkt. 51-1 at 30:13-21. Mr. Bankhead said, "I ain't cuffing up." *Id.* The parties dispute whether Mr. Bankhead threw an unknown liquid at the officers. *Id.* At around the eleven minute and thirty second mark of the video, Lt. Pfleeger used the OC spray to apply a one-second burst of spray into Mr. Bankhead's cell. Dkt. 56; *see* dkt. 51-2 at 1. This was the first time that the OC spray was actually deployed. Dkt. 51-1 at 30:13-21.

After the first spray, Sgt. Gray continued to remove the clothes from the cell door while Lt. Pfleeger held the can of OC spray up to warn Mr. Bankhead. Dkt. 56. The incident report states

that Mr. Bankhead reached into his toilet again to throw water at the Defendants. Dkt. 51-2 at 1. Mr. Bankhead denies this. Dkt. 51-1 at 30:13-21. In any case, Mr. Bankhead refused to remove the clothes and cuff up. *Id.* at 35:19–38:18. Mr. Bankhead also testified that he put his property box next to the door and started to kick the door. *Id.* at 38:3-11. At that point, Lt. Pfleeger deployed a one second burst of OC spray for the second time. Dkt. 56 at 13:51.

After the second deployment of OC spray, Mr. Bankhead continued to refuse to come out of his cell and the Defendants continued to cut down the clothes. *Id.* at 19:45–30:00 minutes. Finally, at around the thirty minute mark of the video, Mr. Bankhead agreed to submit to restraints and leave his cell. *Id.*

The Defendants then took Mr. Bankhead to the medical unit and to receive a decontamination shower. Dkt. 51-2 at 1, 8–9. The medical record reports that "no visual injury seen or verbalized." *Id.* at 9.

## III.
## Discussion

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). Force, however, remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good- faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes

referred to as the "*Whitley* factors." Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

It is not cruel and unusual punishment to use "mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners[.]" *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). A prison officer may use small amounts of pepper spray to compel a disobedient prisoner to leave a cell. *Id.*; *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (where prisoner had hit his cellmate and refused to comply with order to leave cell, use of pepper spray was justifiable). But "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto*, 744 F.2d at 1270.

In this case, the Defendants argue that they used a reasonable amount of OC spray in a good faith attempt to restore order after Mr. Bankhead refused to comply with their orders. Dkt. 52. Mr. Bankhead argues that the Defendants did not need to use OC spray since all he wanted was for them to clear the range of other inmates so that he could be extracted without danger. Dkt. 60. He also argues that he did not throw urine at the Defendants, and they delayed giving him a decontamination shower. *Id.* The Defendants replied that none of Mr. Bankhead's disputes about the facts materially alter the conclusion that they did not use excessive force by deploying two one-second sprays of OC spray after he continuously refused to comply with their orders. Dkt. 62. Although Mr. Bankhead correctly points out that there are disputes of fact concerning whether he threw urine and how long the Defendants waited to give him a decontamination shower, the Court

agrees with the Defendants that these disputes are not material. Thus, the Court grants summary judgment for the Defendants.

First, even assuming that Mr. Bankhead did *not* throw urine, the record clearly shows that the Defendants had a need to use force to restore order. *See McCottrell*, 933 F.3d at 663. Mr. Bankhead admitted to "to "act[ing] like a donkey" and "caus[ing] a scene" by throwing water and barricading his cell door with clothes that he had wet to make it harder to remove. Dkt. 51-1 at 7:20–8:14; 23: 8-17; 32:3-16. By barricading his cell, Mr. Bankhead instigated a security risk by limiting the Defendants' ability to see inside his cell and extract him. Then, Mr. Bankhead admittedly continued to refuse to remove the clothes and submit to restraints. Only after talking with Mr. Bankhead for roughly ten minutes and then giving him a warning, did Lt. Pfleeger deploy a one-second burst of OC spray. The Seventh Circuit has recognized that "the use of [OC spray] in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required." *Soto*, 744 F.2d at 1270 (internal quotation and citation omitted). Then, after Mr. Bankhead continued to refuse orders and admittedly began kicking the door and his property box, Lt. Pfleeger deployed a second one second burst of OC spray. This was done after another visual warning.

Second, Mr. Bankhead has not disputed that both deployments of OC spray were minimal, lasting for one second each. Although Mr. Bankhead had to stay in his cell and tolerate being in confined quarters after the deployment, the delay was largely of his own making because he refused to submit to restraints or remove the barricades.

Third, Mr. Bankhead has not designated evidence showing that the OC spray caused extensive injury and the medical record in evidence shows the nurse did not observe injuries or

hear Mr. Bankhead complain about any. As stated above, Mr. Bankhead stayed in his cell on his own volition for roughly twenty minutes, which no doubt contributed to his pain. Nevertheless, any prolonged pain during those twenty minutes was not caused by Defendants' infliction of unnecessary and wanton pain. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992). It was caused by Mr. Bankhead's refusal to leave his cell unless the officers called a signal. Once Mr. Bankhead agreed to submit to restraints, he claims that the Defendants further prolonged his pain by taking him to the medical wing before taking him to the decontamination shower. But, this factual allegation does not appear in Mr. Bankhead's complaint or in the Court's screening order. *See* dkts. 1, 13. Therefore, any dispute about the order in which he was taken to the showers is immaterial to this lawsuit. *Anderson v. Donahoe*, 699 F.3d 989, 997–98 (7th Cir. 2012) ("a plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'") (quoting *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)).

Taking these factors together, the Defendants' conduct does not show malicious force or an application of force that exceeded the good faith need to restore order. *See Lewis*, 581 F.3d at 476 (explaining that prisons "are dangerous places, and it is without rational dispute that security officials are justified in maintaining decorum and discipline among inmates to minimize risks to themselves and other prisoners.") (citing *Bell v. Wolfish*, 441, U.S. 520, 546 (1979)). Accordingly, the Court grants summary judgment for the Defendants.[1]

[1] Because the Court finds that the Defendants did not violate Mr. Bankhead's Eighth Amendment rights, the Court does not discuss the Defendants' defense of qualified immunity.

## IV. Conclusion

The Defendants' motion for summary judgment, dkt. [50], is **GRANTED**. Final judgment will issue in a separate entry.

**IT IS SO ORDERED.**

Date: 8/19/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ACTORA MECONN BANKHEAD
914468
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All ECF-registered counsel of record via email